IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HEATHER R. POWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12cv980-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.  Introduction

The plaintiff applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., alleging that she was unable to work because of a disability.  Her application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The parties have consented to the United

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

(1)    Is the person presently unemployed?
(2)    Is the person's impairment severe?
(3)    Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)    Is the person unable to perform his or her former occupation?
(5)    Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance; it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted).  The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.  The Issues

**A.  Introduction**.  The plaintiff was 26 years old on the date of onset of disability. (R. 123, 132). She has completed the eleventh grade.  (R. 142).  Her past work experience includes work as a fast food worker.  (R. 32).  Following the hearing, the ALJ concluded

---

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

that the plaintiff has severe impairments of "post concussion headaches and major depressive disorder." (R. 25).  The ALJ concluded that the plaintiff was able to return to her past relevant work as a fast food worker, and thus, she was not disabled.  (R. 31-33).

**B. Plaintiff's Claims**.  As stated by the plaintiff, she presents the following three issues for the Court's review.

1.    The Commissioner's decision should be reversed because the ALJ failed to give great weight to the opinion of Ms. Powell's treating physician, Dr. Steven Davis.

2.    The Commissioner's decision should be reversed because the ALJ's finding that Ms. Powell is capable of performing a full range of work at all exertional levels is not supported by substantial evidence.

3.    The Commissioner's decision should be reversed because the ALJ failed to properly consider Ms. Powell's credibility.

(Doc. # 13, Pl's Br. at 5).

## IV.  Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work.   *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family

4

or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added). Within this analytical framework, the court will address the plaintiff's claims.

    **A.** **Treating Physician.** Powell argues that the ALJ improperly rejected her treating physician's opinion without providing sufficient reasons. (Doc. # 13, Pl's Br. at 6). According to the plaintiff, because the ALJ failed to identify any contradictory evidence to Dr. Davis' opinion, she has failed to identify "good cause" to reject his opinion. (*Id*.). Of course, this is not the standard for evaluating the treating physician's opinion.

    The law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).

Case 2:12-cv-00980-CSC   Document 18   Filed 10/15/13   Page 6 of 21

The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)).  The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error.  *Broughton*, 776 F.2d at 961-62.

There are, however, limited circumstances when the ALJ can disregard the treating physician's opinion.  The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, *or* where the evidence supports a contrary finding.  *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence.  *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment.  *Wheeler v.*

6

*Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).  The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

On December 29, 2010, Dr. Steven Davis completed a clinical assessment of pain and a physical capacity evaluation assessing Powell's impairments. (R. 315-16). According to Dr. Davis, Powell's pain was severe enough to distract her from work, physical activity would increase her pain, and side effects from her medication would be considered severe. (R. 315).  He also opined that she could only lift 5 pounds occasionally, sit for one hour in a work day, stand or walk for two hours and she would be absent from work more than four days per month.  (R. 316).  A treatment note on that day also reflects Dr. Davis' opinion.

> Comes in today for a disability form to be filled out.  She continues to have headaches.  She continues to really kind of hurt all over from time to time. This woman was involved in a terrible MVA.  I think she is very lucky that she did not kill herself.  She had a terrible concussion and has never been the same since.  I really think that she has some profound brain damage, which of course is not easy to measure.  She is just not the same person that she used to be.  Hopefully this will be taken into consideration on her disability application.  Sometimes things are very difficult to put into words about a person.  We can use all sorts of fancy words, but it doesn't get down to the basic issues of a patient and all I can say is this person following the MVA, she is different, her cognitive functions are different, her whole personality seems to be different.

(R. 317).

7

After reviewing the medical evidence, the ALJ gave Dr. Davis' opinion "little weight" because

> it is inconsistent with Dr. Davis (sic) own treatment records, it is inconsistent with the longitudinal medical evidence, and it is inconsistent with the amount of treatment the claimant has received. For instance, Dr. Davis never referred the claimant to pain management, he did not prescribe her narcotic pain medications, and he did not see her for almost one year prior to filling out this form, which would suggest the claimant had not experienced any pain worthy of seeking medical attention in almost twelve months (All Exhibits). This opinion is also inconsistent with the objective medical evidence, which was all normal. It is inconsistent with the claimant's own reported activities of daily living, which include caring for her two children. Dr. Davis also opined that the claimant can occasionally lift and carry up to five pounds, she can sit for one hour out of eight and stand or walk for two hours out of eight (Exhibit 11F, page 3). He opined that the claimant can never climb stairs or ladders or work around hazardous machinery, and he stated that she would miss more than four days per month from work as a result of her impairments (Exhibit 11F, page 3). This opinion was also given little weight because it is inconsistent with Dr. Davis' treatment records and the objective medical evidence. The claimant did not visit Dr. Davis for almost one year, and then she showed up and asked him to fill out forms based on his treatment notes taken shortly after she had a motor vehicle accident. Even in those notes, Dr. Davis did not state the claimant had any restrictions related to her reported headaches (Exhibits 6F, 10F, and 12F). The objective medical evidence is all normal. The claimant did report post accident headaches to Dr. Davis, but she had a normal CT scan, and Dr. Davis did not refer her to any specialists to manage her condition. He also did not refer her to pain management for her condition.

(R. 28-29).

The ALJ acknowledged that Powell suffers from headaches, but after a thorough review of her treatment records, discounted Dr. Davis' assessment. The ALJ's decision to discount Dr. Davis' assessment is supported by substantial evidence. Although Powell

testified that her most disabling impairment is pain caused by headaches from a concussion suffered in the motor vehicle accident, Dr. Davis' treatment records do not support his assessment of the severity of this impairment.  Powell was in a single car accident on June 17, 2009.  (R. 202).  She sustained facial injuries including a bilateral fracture of her nasal bone, fractures of the right and left mandibulars, and facial lacerations.  (R. 203).  She also sustained a cerebral concussion.  (*Id*.).  At the scene of the accident, Powell complained about her foot which had been caught between the dashboard and gas pedal.  (R. 332).  She denied any other pain and repeatedly stated she was "fine."  (*Id*.)  However, "[w]hen she arrived at the emergency room she was inebriated, but oriented to time, place, and person; at that time was not really having any particular complaints."  (R. 202).

X-rays of the thoracic spine, lumbar spine, and cervical spine were all negative.  (R. 205).  A CT scan of her brain revealed no intracerebral bleeding, and no skull fracture.  (R. 207).  She was "awake and alert, well oriented to time, place, and person, anxious to go home."  (R. 204).  Dr. Davis specifically noted that she was "exhibiting no neurological deficits."  (*Id*.)  Treatment notes after surgery to repair the facial fractures reflect that Powell was "cleared by [the Mizell Hospital] physician neurologically."  (R. 219).

On June 29, 2009, Powell complained to Dr. Davis of having headaches.  Dr. Davis noted that the headaches were "probably from her concussion" although he thought they might also be caused by her neck.  (R. 253)  He prescribed Flexeril.  On August 25, 2009, Powell complained to Dr. Davis of headaches and black out spells.  (R. 252).  At that time,

9

Dr. Davis attributed Powell's symptoms to hypoglycemia.[4]  (*Id.*)  He prescribed ibuprofen.  (*Id.*)

On September 4, 2009, Powell underwent another CT scan of her brain to ascertain whether her headaches were caused by her concussion.  (R. 288).  The scan was negative.  (R. 290).  Dr. Davis diagnosed Powell with reactive hypoglycemia.  (R. 298).  On September 17, 2009, Powell again complained of "really bad headaches" but Dr. Davis noted that he was "not sure what [was] going on."  (R. 299).  In a November 12, 2009 treatment note, Dr. Davis opined that Powell's headaches might be migraine in nature "even though it is odd that they started after her MVA."  (R. 300).

Dr. Davis next saw Powell on January 6, 2010, when she complained of headaches and neck pain.  (R. 296).  Topamax medication did not help.  (*Id.*)

Powell did not see Dr. Davis again until November 23, 2010 when she complained of being tired all the time.  (R. 296, 317).  She also complained of difficulty remembering things.  (R. 317).  At that time, Dr. Davis noted that Powell "had a terrible head injury . . . and probably had a terrible concussion and might well have some type of chronic problems related to that."  (*Id.*)  He diagnosed her with tension headaches and prescribed Cymbalta medication.  (*Id.*)

Powell returned to Dr. Davis on December 29, 2010, and asked that he complete the

---

[4] On August 26, 2008, Powell complained of experiencing a "near syncopal episode" which was attributed to hypoglycemia.  (R. 292).

disability forms.  (*Id*.)  It was at this appointment that Dr. Davis opined that Powell was suffering from "some profound brain damage."  (*Id*.)  There is no notation in any of Dr. Davis' treatment records nor is there any objective medical evidence to substantiate this statement.

Dr. Davis' assessment of Powell was based on six office visits from the previous year.  During 2010, Dr. Davis had seen Powell only once in January and once in November before he completed the disability assessment in December.  He attributed "profound brain damage" to Powell even though two CT scans were negative.  Consequently, Dr. Davis' treatment notes do not support the level of disability he attributes to Powell.

In addition, the other medical evidence of record supports the ALJ's decision to discount Dr. Davis' opinion. Dr. William Watson performed a neurological examination of Powell on February 7, 2011.  (R. 359-60).  At that time, she was acceptably alert, and oriented to place, time and person.  (*Id*.)  Her speech was clear.  (*Id*.)  Dr. Watson opined that her headaches may be "rebound headaches" caused by chronic use of daily pain medication.  (*Id*.)  Dr. Watson did not opine that Powell was suffering from brain damage and he did not suggest that she was disabled or unable to work.  (*Id*.)

The  ALJ may disregard the opinion of a physician, provided that she states with particularity reasons therefor.  *Sharfarz, supra*.  The ALJ examined and evaluated the treatment records for evidence supporting Dr. Davis' assessment of Powell's ability to work, and she considered Powell's own testimony.  Only then did the ALJ discount Dr.

Davis' assessment of Powell's abilities.  The evidence in the record supports the ALJ's findings regarding Dr. Davis' assessment of Powell.  "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram,* 496 F.3d at 1269 (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). *See also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988). This the plaintiff has failed to do.  Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Davis' opinion regarding the limitations caused by Powell's headaches.

   **B.   Residual Functional Capacity.**  Powell next complains that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence because "the record does not contain any RFC assessments from any treating or examining physicians which support the ALJ's RFC assessment."  (Doc. # 13 at 8).   The ALJ concluded that the plaintiff had the residual functional capacity

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine, repetitive tasks.  She can concentrate for up to two hours. She can have minimal changes in a work setting.  She can have no concentrated exposure to fumes, odors, gases, temperature extremes.  She cannot work at unprotected heights or around dangerous machinery.  She cannot operate automotive equipment.

(R. 28).

   An ALJ is required to independently assess a claimant's residual functional capacity "based upon all of the relevant evidence." 20 CFR § 404.1545(a)(3) ("We will assess your

residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) ("Responsibility for assessing residual functional capacity at the administrative law judge hearing . . . level.  If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.")  *See also Lewis*, 125 F.3d at 1440 ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments.").  "Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)."  *Peeler v. Astrue,* 400 Fed. Appx. 492, 494 n.2 (11th Cir. 2010).

The plaintiff argues that "the ALJ is required to have evidence from a physician which supports her RFC assessment given that it is by definition "a medical assessment."" (Doc. # 13 at 9).  In essence, the plaintiff contends that the record must contain a residual functional capacity determination by an examining or treating physician.  However, the plaintiff's argument conflates the nature of residual functional capacity with the responsibility for making the residual functional capacity determination.  The Commissioner's regulations clearly show who is responsible for making the residual functional capacity determination when a case has reached the administrative law judge hearing.

13

> If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.

20 CFR § 404.1546.

But that observation does not end the enquiry.  The essential question raised by the plaintiff is whether it is necessary to have a residual functional capacity assessment by a medical provider as part of the evidence which an ALJ must consider in reaching a determination.  In this case, the answer is no.  The ALJ stated that she

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 416.929 and SSRs 96-4p[5] and 96-7p.[6]  The undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.[7]

(R. at 28) (footnotes added).

Although Powell also complains that the ALJ's RFC is contrary to the RFC offered by her treating physician, the ALJ was not required to accept her treating physician's RFC.  The ALJ reviewed and considered all the medical evidence in the record in determining Powell's RFC.  The court has independently considered the record as a whole and finds that

---

[5] This Ruling clarifies the policy of the Social Security Administration on the evaluation of symptoms in the adjudication of claims for disability benefits under title II and title XVI of the Social Security Act.

[6] This Ruling clarifies when the evaluation of symptoms, including pain, requires a finding about the credibility of an individual and explains the factors to be considered in assessing the credibility of the individual's statements about symptoms.

[7] Generally, these Rulings describe how the Commissioner evaluates and uses medical source opinions.

the record provides substantial support for the ALJ's conclusions.  Consequently, the court concludes there was sufficient medical evidence before the ALJ from which she properly could made a residual functional capacity assessment.

Powell accuses the ALJ of speculating on her physical abilities, and contends that the ALJ should have secured a consultative evaluation.  (Doc. # 13 at 11).  The ALJ did order a neurological consultative evaluation, (R. 359-67), and considered that assessment in determining Powell's RFC.

Finally, Powell attempts to improperly shift to the Commissioner the burden of establishing the evidentiary basis from which her residual functional capacity may be determined.  In the fourth step of the sequential analysis, the ALJ determines the claimant's RFC and her ability to return to her past relevant work.  *Phillips*, 357 F.3d at 1238.  While the ALJ has the responsibility to make a determination of plaintiff's RFC, it is plaintiff who bears the burden of proving her RFC, *i.e.*, she must establish through evidence that her impairments result in functional limitations and that she is "disabled" under the Social Security Act.  *See* 20 C.F.R. § 404.1512 (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled").  *See also Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001) (it is claimant's burden to prove RFC, and ALJ's responsibility to determine RFC based on medical records, observations of treating

physicians and others, and claimant's description of limitations).

In support of her position regarding her RFC, Powell relies on a case from another district for the proposition that the Commissioner's residual functional capacity assessment must be supported by a residual functional capacity assessment of a physician. *See* Doc. # 13 at 9 ("the ALJ's finding must be supported by an RFC assessment of a treating physician or examining physician." citing *Coleman v. Barnhart*, 264 F.Supp.2d 1007, 1010 (S.D. Ala. 2003)). But *Coleman* is most assuredly not the last word on this issue. In *Packer v. Astrue*, ___ F.3d ___, 2013 WL 593497 (S.D. Ala. Feb. 14, 2013), Chief Judge Granade rejected the absolutism of *Coleman*, noting that "numerous court had upheld ALJ's RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician." *Id.* at *3. Like those other courts, this court rejects *Coleman's* seemingly mandatory requirement that the Commissioner's fifth-step burden must be supported by an RFC assessment of a physician.[8] The ALJ had before her sufficient medical evidence from which she could make a reasoned determination of Powell's residual functional capacity. Thus, she was not required to secure from a medical source a residual functional capacity assessment.

**C.    Credibility Analysis**. Finally, the plaintiff argues that the ALJ "failed to properly consider [her] credibility by impermissibly finding that (1) Ms. Powell's

---

[8]   The court notes with dismay that the plaintiff failed to cite for the court the many cases which disagree with *Coleman v. Barnhart*, 264 F.Supp.2d 1007, 1010 (S.D. Ala. 2003). Counsel is reminded of his obligation of candor to the court.

participation in her activities of daily living disqualifies her from disability and (2) Ms. Powell's alleged lack of treatment disqualifies her from disability." (Doc. # 13 at 12). "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If

17

there is no such support, then the testimony must be accepted as true.  *Hale*, 831 F.2d at 1012.

According to Powell, the fact that she cares for her children does not demonstrate that she is not disabled.  (Doc. # 13 at 12).  At the administrative hearing, the plaintiff testified that she has two children, ages nine and seven.  (R. 46)  She further testified that she has "back pain and headaches and my body hurts."  (R. 44).  She also testified she sometimes cooks, but that she and her mother do the laundry.  (R. 45-46).  She testified that her pain was a six or seven on a scale of one to ten, and that she "can't remember as good" as she did before the accident.  (R. 47-48).  Finally, she testified that while she does not black out, when she sits up she "get[s] very blurry and stuff for like 10 to 15 minutes." (*Id*.)  As explained more fully below, the ALJ did not fully credit this testimony.

The ALJ discredited the plaintiff's testimony of disabling pain and functional restrictions.

> Moreover, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  The claimant is the only adult in the household with her two children ages nine and seven, and she provides their only source of care (Hearing Testimony).  The claimant stated that her daily activities include sitting and playing with her children, cooking, lying around, and watching television (Exhibit 3E, page 1).  She stated that she cleans the house and performs chores such as sweeping and vacuuming (Exhibit 3E, page 3).
>
> After considering the evidence of the record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible

18

to the extent they are inconsistent with the above residual functional capacity assessment.

(R. 31).

If this were the extent of the ALJ's credibility, the plaintiff might be correct.

However, the ALJ also included the following in her analysis.

In making this [RFC] determination, the undersigned considered all the evidence of record as well as the claimant's allegations and activities of daily living.

In short, the claimant's allegations were not credible because they were inconsistent with the objective medical evidence, which showed that the claimant had a normal spine, a normal CT scan of her head, and a normal neurological evaluation. The claimant has not had any finding of any abnormalities involving her cranial nerves or cerebullar functioning. The objective evidence also showed that the claimant's depression has responded well to treatment with Cymbalta. The claimant has not been referred to pain management, physical therapy, or any specialists to treat her conditions. She has rarely sought medical treatment with the exception of the period of time directly after her automobile accident. The clinical findings do not support the claimant's allegations of severe, debilitating headaches. Dr. Grant[9] mentioned the possibility that the claimant could be experiencing rebound headaches from taking too much over the counter medication, but even he stated that her alleged headaches were from an unknown etiology. After January 2010, the claimant did not seek medical treatment again until November 2010 when she asked Dr. Davis to fill out disability forms for her (All Exhibits). Such infrequent treatment is inconsistent with uncontrolled, debilitating daily pain of any kind.

Also, the claimant's allegations that she needs to constantly change positions throughout the day due to back pain are not credible. The x-rays of the claimant's spine were normal, and Dr. Watson found that the claimant's back

---

[9] Dr. William G. Watson completed the neurological evaluation and suggested that Powell might be suffering from rebound headaches. It appears that the reference to Dr. Grant is merely a scrivener's error as Dr. Watson completed the evaluation.

pain appeared to be related to her paraspinal muscles and corresponding bone with no suggestion of radiculopathy (Exhibit 14F).  None of the claimant's treating physicians referred her to physical therapy or pain management.

(*Id*.) (footnote added).

The ALJ has discretion to discredit a plaintiff's subjective complaints as long as she provides "explicit and adequate reasons for [her] decision." *Holt,* 921 F.2d at 1223.  The ALJ compared the objective medical evidence to Powell's complaints and determined that Powell's allegations of disabling pain were not supported by the medical evidence.  The ALJ did not simply discredit Powell based upon her daily activities or lack of treatment.

Furthermore, when an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, *or the record must be obvious as to the credibility finding. Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (emphasis added); *Jones*, 941 F.2d at 1532 (articulated reasons must be based on substantial evidence).  The objective, medical records, coupled with Powell's own  testimony, demonstrate that her allegations regarding the extent of her pain were not credible to the extent alleged.  After a careful review of the record, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination.  It is undisputed that the plaintiff suffers from pain.  The ALJ considered that the plaintiff's underlying condition is capable of giving rise to some pain and other limitations, but she concluded that the plaintiff's underlying impairments are not so severe as to give rise to the disabling intractable pain as alleged by the plaintiff.

To the extent that the plaintiff argues that the ALJ should have accepted her testimony about her pain, as the court has explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## V.  Conclusion

The court has carefully and independently reviewed the record, and concludes that the decision of the Commissioner is supported by substantial evidence.

A separate order will be entered affirming the Commissioner's decision.

Done this 15th day of October, 2013.


      /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

21